**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| REBECCA RAE GONZALES-WELCH,  )<br>  )<br>        Plaintiff,  )<br>  )<br>    v.  )<br>  )<br>NANCY A. BERRYHILL, Acting  )<br>Commissioner of Social Security,  )<br>  )<br>        Defendant.  )<br>  ) | Case No.: 1:17-cv-01620-BAM<br><br>**ORDER REVERSING AGENCY'S DENIAL OF BENEFITS AND ORDERING REMAND** |

**INTRODUCTION**

Plaintiff Rebecca Rae Gonzales-Welch ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying her application for disability insurance benefits ("DBI") under Title II of the Social Security Act and for supplemental security income ("SSI") under Title XVI of the Social Security Act. The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to Magistrate Judge Barbara A. McAuliffe.[1]

Having considered the parties' briefs, along with the entire record in this case, the Court finds that the decision of the Administrative Law Judge ("ALJ") is not supported by substantial evidence in

---

[1] The parties consented to the jurisdiction of a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c)(1). (Doc. Nos. 5, 7.)

1

the record and is not based on proper legal standards. Accordingly, the Court will direct that the Commissioner's determination be REVERSED and REMANDED for further proceedings.

## FACTS AND PRIOR PROCEEDINGS

On November 19, 2013, Plaintiff protectively filed applications for DBI and for SSI alleging disability beginning October 30, 2011 due to lupus, fibromyalgia, rheumatoid arthritis, and migraines. AR 207, 292-306.[2] Plaintiff's applications were denied initially and on reconsideration. AR 119-184, 218-222. Plaintiff subsequently requested a hearing before an Administrative Law Judge ("ALJ"). AR 223-235. ALJ Nancy Stewart held a hearing on August 18, 2016, and issued an order denying benefits on November 28, 2016. AR 18-81. Plaintiff sought review of the ALJ's decision, which the Appeals Council denied, making the ALJ's decision the Commissioner's final decision. AR 1-7. This appeal followed.

**Relevant Hearing Testimony**

The ALJ held a hearing on August 18, 2016, in Fresno, California. AR 40-81. Plaintiff appeared and was represented by her attorney, Robina Ali. AR 18, 40. Impartial Vocational Expert Jose Chaparro also appeared. AR 40.

When questioned by the ALJ, Plaintiff testified that she sees her treating physician monthly and began receiving physical therapy the previous month. AR 45-46. She initially went to physical therapy three times a week, but her visits were reduced to twice a week and then to once a week. AR 47. Plaintiff is 47 years old, completed the eighth grade, and went to adult classes to obtain her GED but did not complete the necessary testing. AR 48. Plaintiff is 5 feet 3 inches tall and weights 189 pounds. AR 49. She currently lives with her children. AR 50. Plaintiff has fifteen-year-old twins and a nineteen-year-old daughter and has also been the legal guardian for her ten-year-old grandson for the last four or five years. AR 50-51. She has her drivers' license and can drive but sometimes receives help from her children and family with driving, depending on how she feels. AR 51.

In response to questioning by her attorney, Plaintiff testified that she experiences pain in the back of her shoulders, primarily on the left side, that radiates down her shoulders to her elbows and

---

[2] References to the Administrative Record will be designated as "AR," followed by the appropriate page number.

2

hands. AR 53. She also has pain radiating through her legs, knees, and feet and experiences migraines twice a week that last for three to four days. AR 53-54. When asked about her daily activities, Plaintiff testified that she has difficulty showering and needs help dressing on days that she is unable to bend and stretch. AR 55. She can do light laundry herself, including folding and sorting clothing, can wipe the counters, sometimes cooks, and does light sweeping. AR 55-56.

Plaintiff estimates that she can walk fifteen or twenty minutes at a time before needing to rest for five to ten minutes because her knees begin to feel heavy, numb, and painful. AR 56-57. She can stand for approximately ten to fifteen minutes at a time, sit for twenty to thirty minutes at a time, and lift seven pounds without difficulty. AR 57-58. Plaintiff's hands swell after too much activity and she is frequently fatigued. AR 58-59.

Plaintiff typically wakes in the morning to assist her grandson in getting ready for school, takes her medications, and then lies down until noon. AR 59-60. Plaintiff gets up at noon, eats, folds clothing, wipes the counters, does light dishes, sweeps, and tries to make her grandson's bed. AR 60-61. She takes anxiety medication and experiences heart racing, nervousness, shaking, and sweatiness approximately two to three times per day. AR 61-62. Multi-tasking is difficult for her and Plaintiff often loses focus. AR 62. Others sometimes have difficulty understanding Plaintiff and she needs to repeat herself. AR 63. Plaintiff experiences depression and was originally diagnosed with rheumatoid arthritis, but that diagnosis was subsequently changed to fibromyalgia and Sjogren's syndrome. AR 63-64.

When questioned by the ALJ about her prior work history, Plaintiff testified that she previously worked as a hostess and then a waitress at Sizzler, an in-house supportive services worker, and in catering. AR 65-67, 69. As a hostess, Plaintiff was required to lift trays and seat guests, man the register, clean windows, sweep, and wipe counters. AR 68, 74-75. Plaintiff additionally carried trays weighing at least twenty pounds while working as a waitress. AR 68. Plaintiff also received two months of training to perform home kidney hemodialysis prior to becoming an in-house supportive services worker for her mother. AR 70-72.

Following Plaintiff's testimony, the ALJ elicited testimony from the Vocational Expert ("VE"), Jose L. Chaparro. The VE testified that Plaintiff's work history included in-home care attendant and

informal waiter/waitress. AR 74. The ALJ also asked the VE hypothetical questions. AR 76-78. For the first hypothetical, the ALJ asked the VE to assume a person with the same age, education, and past work experience as Plaintiff who could carry no more than ten pounds, either occasionally or frequently, push and pull within the same weight limit, stand and walk two hours out of an eight-hour workday, sit for six hours out of an eight-hour workday, never use ladders, ropes, or scaffolds, never work in hazardous work environments such as working at unprotected heights, operating fast or dangerous machinery, or driving commercial vehicles, and could perform noncomplex routine tasks. AR 76. The VE testified that Plaintiff's past work was not available but there was sedentary work available. AR 77.

For the second hypothetical, the ALJ asked the VE to assume a hypothetical person was unable to work a productive eight-hour workday and, because of chronic fatigue, chronic pain, and inability to concentrate and focus, was only productive four to six hours out of an eight-hour day once a week. AR 77. The VE testified there would be no jobs available. For the third hypothetical, the ALJ asked the VE to assume that, for the same reasons identified in the second hypothetical, the hypothetical individual would have three or more absences a month. AR 77. The VE testified there would be no jobs available.

For the fourth hypothetical, the ALJ asked the VE to assume that a hypothetical person could only handle, finger, and feel occasionally. AR 77. The VE testified that there would be no jobs available. AR 77. The VE further testified that although the Dictionary of Occupational Titles ("DOT") lists approximately two or three occupations that allow occasional handling, fingering, and feeling, in his experience over the last thirty-seven years that is not realistic, and he therefore disagreed with the DOT and opined that no jobs would be available. AR 77-78. The ALJ

For the fifth hypothetical, the ALJ asked the VE to assume that the hypothetical individual could frequently handle, finger, and feel at a sedentary level. AR 78. The VE testified there would be sedentary jobs available, such as a microfilming document preparer, telephone quotation clerk, and addresser. AR 78.

Finally, Plaintiff's attorney asked the VE hypothetical questions. AR 79-81. Plaintiff's attorney asked the VE to add to the ALJ's hypotheticals that the individual would be required sit and rest for five to ten minutes after standing and walking for fifteen or twenty minutes. AR 79. The ALJ stated that

4

this was already considered in the condition that the hypothetical individual would only be productive four to six hours out of an eight-hour workday and no jobs were available. AR 79-80.

**Medical Record**

The relevant medical record was reviewed by the Court and will be referenced below as necessary to the Court's decision.

**The ALJ's Decision**

Using the Social Security Administration's five-step sequential evaluation process, the ALJ determined that Plaintiff was not disabled under the Social Security Act. AR 17-31. Specifically, the ALJ found that Plaintiff met the insured status requirements of the Social Security Act through March 31, 2016 and had not engaged in any substantial gainful activity since October 30, 2011, her alleged onset date. AR 20. The ALJ identified fibromyalgia, Sjogren's syndrome, obesity, history of anemia, anxiety disorder, and affective disorder as severe impairments. AR 20-21. Nonetheless, the ALJ determined that Plaintiff does not have an impairment or combination of impairments that meet or medically equal the severity of one of the listed impairments. AR 21-23. Based on her review of the entire record, the ALJ found that Plaintiff has the residual functional capacity ("RFC") to perform sedentary work, including lifting and carrying ten pounds frequently, sitting for six hours and standing or walking for two hours in an eight-hour workday, with restrictions in the form of never climbing ladders, ropes, or scaffolds, frequently handling, fingering, and feeling, avoiding hazards such as working at unprotected heights, operating fast or dangerous machinery, or driving commercial vehicles, and could perform non-complex, routine tasks. AR 23-29. With this RFC, the ALJ found that Plaintiff could not perform any past relevant work. AR 29. Plaintiff was defined as a younger individual on the alleged disability onset date, has a limited education, and is able to communicate in English. AR 29. Moreover, the ALJ found that transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that Plaintiff is not disabled whether or not Plaintiff has transferable job skills. AR 29. Considering Plaintiff's age, education, work experience, and RFC, the ALJ found that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform. AR 30. The ALJ therefore concluded that Plaintiff was not disabled under the Social Security Act. AR 30.

## SCOPE OF REVIEW

Congress has provided a limited scope of judicial review of the Commissioner's decision to deny benefits under the Act. In reviewing findings of fact with respect to such determinations, this Court must determine whether the decision of the Commissioner is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence means "more than a mere scintilla," *Richardson v. Perales*, 402 U.S. 389, 402 (1971), but less than a preponderance. *Sorenson v. Weinberger*, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975). It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401. The record as a whole must be considered, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion. *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985). In weighing the evidence and making findings, the Commissioner must apply the proper legal standards. *See, e.g., Burkhart v. Bowen*, 856 F.2d 1335, 1338 (9th Cir. 1988). This Court must uphold the Commissioner's determination that the claimant is not disabled if the Commissioner applied the proper legal standards, and if the Commissioner's findings are supported by substantial evidence. *See Sanchez v. Sec'y of Health and Human Servs.*, 812 F.2d 509, 510 (9th Cir. 1987).

## REVIEW

In order to qualify for benefits, a claimant must establish that he or she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 1382c(a)(3)(A). A claimant must show that he or she has a physical or mental impairment of such severity that he or she is not only unable to do his or her previous work, but cannot, considering his or her age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. *Quang Van Han v. Bowen*, 882 F.2d 1453, 1456 (9th Cir. 1989). The burden is on the claimant to establish disability. *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990).

# DISCUSSION[3]

## A. Physician Opinions

Plaintiff first argues that the ALJ erred in assigning little weight to the opinions of her treating physician, Charles H. Boniske, M.D., and by failing to account for a sit/stand option set forth in the opinions of consultative examiner Emmanuel Fabella, M.D., and non-examining state agency medical consultants W. Jackson, M.D. and E. Wong, M.D. (Doc. No. 11 at pp. 19-24.)

Cases in this circuit identify three types of physicians: (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (nonexamining physicians). *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). Generally, the opinions of treating physicians are entitled to the most weight, while the opinions of examining physicians are entitled to more weight than the opinions of nonexamining physicians. *Id.* This is because a treating doctor is employed to cure and has a greater opportunity to know and observe the patient as an individual. *Smolen v. Chater*, 80 F.3d 1273, 1285 (9th Cir. 1996); *Bates v. Sullivan*, 894 F.2d 1059, 1063 (9th Cir. 1990). Where the opinion of an examining or treating physician is uncontroverted, the ALJ must provide clear and convincing reasons for rejecting that opinion. *Lester*, 81 F.3d at 830-31. Even if contradicted by another doctor, the opinion of an examining or treating doctor can be rejected only for "specific and legitimate reasons that are supported by substantial evidence in the record." *Id.* The ALJ can meet this burden by setting forth a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings. *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008).

Dr. Boniske

On August 23, 2016, Dr. Boniske completed a Rheumatoid Arthritis Impairment Questionnaire. AR 1432-1438. Dr. Boniske opined that Plaintiff had no limitations in her ability to grasp, turn, or twist objects, use her fingers or hands for fine manipulation, or use her arms for reaching. AR 1433. However, Dr. Boniske estimated that Plaintiff could sit, stand, and walk for zero to one hours in an

---

[3] The parties are advised that this Court has carefully reviewed and considered all of the briefs, including arguments, points and authorities, declarations, and/or exhibits. Any omission of a reference to any specific argument or brief is not to be construed that the Court did not consider the argument or brief.

eight-hour day, would not be able to sit, stand, or walk continuously in a work setting, and would be required to get up and move around after one hour for a total of forty-five minutes before sitting again. AR 1435-1436. Dr. Boniske additionally opined that Plaintiff could lift and carry five pounds occasionally and could never lift or carry ten pounds or more. AR 1436. Dr. Boniske indicated that Plaintiff's pain, fatigue, and other symptoms were severe enough to frequently interfere with attention and concentration, she could not multi-task or follow through with instructions, and she was incapable of even "low stress" work. AR 1436-1437. She would need to take breaks to rest three to four times per eight-hour workday and would likely be absent from work more than three times per month. AR 1437. Dr. Boniske opined that Plaintiff was unable to push, pull, kneel, bend, or stoop and needed to avoid noise. AR 1437-1438.

In assessing the opinion of Dr. Boniske, the ALJ stated it was "given little weight because it was inconsistent with the medical record. Physical examinations were generally unremarkable with only some trigger points noted." AR 28. The ALJ further cited to Dr. Boniske's office treatment records from February 5, 2015, through August 23, 2016, in support of her assessment. AR 38, 2083-2103.

Here, Dr. Boniske's opinion appears to have been contradicted by consultative examining physician Dr. Fabella, who opined that Plaintiff could lift and carry ten pounds occasionally and less than ten pounds frequently, walk and stand for less than four hours in an eight-hour workday, sit with breaks every thirty minutes, and occasionally climb, balance, kneel, and crawl. AR 1265. Dr. Boniske's opinion was further contradicted by non-examining state agency medical consultants Dr. Jackson and Dr. Wong, who opined that Plaintiff could occasionally lift or carry ten pounds and frequently lift or carry less than ten pounds, stand and walk for a total of three hours in an eight-hour workday, sit for a total of six hours in an eight-hour workday, and occasionally balance, stoop, kneel, crouch, and climb ramps and stairs. AR 129-130, 163-164. Non-examining stage agency medical consultants D. Funkenstein, M.D. and Kim Morris, Psy.D further opined that Plaintiff was able to understand and remember procedures of a simple and routine nature involving 1-2 step job tasks and instructions, maintain concentration and attention for simple tasks for two-hour increments, and sustain an eight-hour day and forty-hour work week schedule on a sustained basis. AR 131-132, 165-166. Given that the opinions of the consultative examining physician and state agency physicians each contradicted Dr.

Boniske's opinion regarding the severity of Plaintiff's limitations, the ALJ was required to provide specific and legitimate reasons supported by substantial evidence in the record to discount Dr. Boniske's opinion.

Plaintiff argues that the reason the ALJ identified for discounting Dr. Boniske's opinion, *i.e.,* that the medical record was inconsistent with the level of incapacity Dr. Boniske described, lacks the support of substantial evidence. (Doc. No. 11 at p. 20.) An ALJ may properly discount a treating physician's opinion that is not supported by the medical record, including his own treatment notes. *Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 692-93 (9th Cir. 2009) (contradiction between treating physician's opinion and his treatment notes constitutes specific and legitimate reason for rejecting treating physician's opinion); *Tommasetti*, 533 F.3d at 1041 ("incongruity" between doctor's questionnaire responses and her medical records provided specific and legitimate reason for rejecting doctor's opinion); *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004) (noting that "an ALJ may discredit treating physicians' opinions that are conclusory, brief, and unsupported by the record as a whole . . . or by objective medical findings"); *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002) ("The ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings.").

Here, as indicated by the ALJ, the treatment notes in the record do not contain findings that are consistent with the degree of limitations to which Dr. Boniske opined. *See* AR 2083-2098. Plaintiff cites to findings of diffuse trigger points, chronic pain, and persistent fatigue in arguing that the medical record is consistent with Dr. Boniske's assessment of Plaintiff's limitations. (Doc. No. 11 at p. 20.) However, Dr. Boniske's treatment notes often describe Plaintiff's trigger points as "moderate" and lack specific findings regarding Plaintiff's complaints of chronic pain and persistent fatigue that would support the degree of limitations to which Dr. Boniske opined. AR 2083, 2092, 2097.

A review of the record reveals that there is substantial evidence supporting the ALJ's finding that the medical records are inconsistent with the severity of the limitations set forth in Dr. Boniske's report. *See* AR 2083-2098. While the treatment records do reflect Plaintiff's reports of pain and fatigue, they do not contain findings substantiating Dr. Boniske's opinion that, as of August 23, 2016, Plaintiff was only able to sit, stand, and walk for zero to one hours per day, would be required to get up and move

around after one hour for a total of forty-five minutes before sitting again, could never lift or carry ten pounds or more, could not multi-task or follow through with instructions, was incapable of even "low stress" work, would need to take breaks to rest three to four times per eight-hour workday, would likely be absent from work more than three times per month, and could not push, pull, kneel, bend, stoop, or tolerate noise. AR 1432-1438; *see also Richardson*, 402 U.S. at 401 (substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."); *Lingenfelter v. Astrue, 504 F.3d 1028, 1035* (9th Cir. 2007) (Court "may not affirm simply by isolating a specific quantum of supporting evidence."); *Tommasetti*, 533 F.3d at 1041-1042 ("[T]he ALJ is the final arbiter with respect to resolving ambiguities in the medical evidence."); *Andrews v. Shalala,* 53 F.3d 1035, 1039 (9th Cir.1995) (Where "the evidence can reasonably support either affirming or reversing a decision, we may not substitute our judgment for that of the [ALJ]."). It is not clear from the record or Dr. Boniske's treatment notes what the bases for these restrictions might be. Considering the record as a whole and weighing both the evidence and supports and detracts from the ALJ's conclusion, the Court considers the ALJ's finding that the medical record is inconsistent with Dr. Boniske's opinion to be supported by substantial evidence and without legal error.

Dr. Fabella, Dr. Jackson, and Dr. Wong

On May 20, 2014, consultative examiner Dr. Fabella opined that Plaintiff "requires breaks from sitting every 30 minutes or so secondary to pain." AR 1265. On July 22, 2014, after a review of the medical record, non-examining state agency medical consultant Dr. Jackson opined that Plaintiff "[m]ust periodically alternate sitting and standing to relieve pain and discomfort." AR 130. On October 23, 2014, after a review of the medical record, non-examining state agency medical consultant Dr. Wong also opined that Plaintiff "[m]ust periodically alternate sitting and standing to relieve pain and discomfort." AR 163.[4] The ALJ afforded the opinions of Dr. Fabella, Dr. Jackson, and Dr. Wong "significant weight." AR 28.

---

[4] Although not discussed by Plaintiff, Dr. Boniske likewise opined that Plaintiff was unable to sit continuously in a work setting and must get up and move around approximately every hour. AR 1435-1436.

Plaintiff argues that the ALJ erred in not addressing a sit/stand option in her RFC finding. (Doc. No. 11 at p. 21.) The Court agrees. Here, the ALJ found that Plaintiff had an RFC to perform sedentary work, including lifting and carrying ten pounds frequently, sitting for six hours and standing or walking for two hours in an eight-hour workday, with restrictions in the form of never climbing ladders, ropes, or scaffolds, frequently handling, fingering, and feeling, avoiding hazards such as working at unprotected heights, operating fast or dangerous machinery, or driving commercial vehicles, and could perform non-complex, routine tasks. AR 23. However, Dr. Fabella, Dr. Jackson, Dr. Wong, and Dr. Boniske each opined that Plaintiff would not be able to sit or stand without taking breaks or alternating between periods of sitting and standing. AR 130, 163, 1265. Despite affording the medical opinions of Dr. Fabella, Dr. Jackson, and Dr. Wong significant weight, the ALJ did not include any sit/stand option in her RFC finding and provided no explanation as to why such a limitation was rejected. *See* AR 23-29. The ALJ erred by disregarding the sit/stand option without identifying any reasons for doing so. *Pierce v. Astrue*, 382 F. App'x 618, 619 (9th Cir. 2010) (ALJ erred by providing no explanation for why he rejected part of treating physician's findings); *see also* 20 C.F.R. §§ 404.1545(a), 416.945(a) (ALJ must assess all evidence in determining a claimant's RFC); *Carmickle v. Comm'r of Soc. Sec. Admin.,* 533 F.3d 1155, 1164 (9th Cir. 2008) ("The ALJ is required to consider all of the limitations imposed by the claimant's impairments"); *Laborin v. Berryhill,* 867 F.3d 1151, 1153 (9th Cir. 2017) ("The RFC assessment must contain a thorough discussion and analysis of the objective medical and other evidence[.]") (internal quotation marks omitted); *Lester,* 81 F.3d at 830 (Commissioner must provide clear and convincing reasons for rejecting examining physician's uncontradicted opinion and specific and legitimate reasons for rejecting contradicted opinion).

While an ALJ does not need to discuss all of the evidence presented, he or she must explain the rejection of significant probative evidence. *Vincent v. Heckler,* 739 F.2d 1393, 1394-94 (9th Cir. 1984.) Here, each of the medical opinions that the ALJ assessed in her RFC, including the three opinions to which the ALJ afforded significant weight, opined that Plaintiff required a sit/stand option. AR 130, 163, 1265, 1435-1436. Moreover, Social Security Ruling 83-12 explains:

> In some disability claims, the medical facts lead to an assessment of RFC which is compatible with the performance of either sedentary or light work except that the person must alternate periods of sitting and standing.

> The individual may be able to sit for a time, but must then get up and stand or walk for awhile before returning to sitting. Such an individual is not functionally capable of doing either the prolonged sitting contemplated in the definition of sedentary work (and for the relatively few light jobs which are performed primarily in a seated position) or the prolonged standing or walking contemplated for most light work. (Persons who can adjust to any need to vary sitting and standing by doing so at breaks, lunch periods, etc., would still be able to perform a defined range of work.)
>
> There are some jobs in the national economy—typically professional and managerial ones—in which a person can sit or stand with a degree of choice. If an individual had such a job and is still capable of performing it, or is capable of transferring work skills to such jobs, he or she would not be found disabled. However, most jobs have ongoing work processes which demand that a worker be in a certain place or posture for at least a certain length of time to accomplish a certain task. Unskilled types of jobs are particularly structured so that a person cannot ordinarily sit or stand at will. In cases of unusual limitation of ability to stand, a VS should be consulted to clarify the implications for the occupational base.

S.S.R. 83-12, 1983 WL 31253, at *4 (1983).

SSR 83-12 accordingly recognizes that a sit/stand option is inconsistent with the prolonged sitting contemplated by sedentary work, but some vocations will allow a worker to sit or stand "with some degree of choice," and therefore urges the ALJ to consult a VE to clarify the implications of a sit/stand option and determine whether specified jobs will accommodate such a limitation. The opinions of Dr. Fabella, Dr. Jackson, and Dr. Wong to the effect that Plaintiff required a sit/stand option can therefore be considered significant and probative evidence. Thus, the ALJ was required to explain why this evidence was rejected.

Additionally, the ALJ's error was not harmless. Courts in the Ninth Circuit "have adhered to the general principle that an ALJ's error is harmless where it is 'inconsequential to the ultimate nondisability determination.'" *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012) (citations omitted). "In other words, in each case we look at the record as a whole to determine whether the error alters the outcome of the case." Here, as discussed above, the ALJ found that Plaintiff was capable of performing sedentary work but the RFC does not encompass a sit/stand option and the ALJ did not properly reject this limitation. Additionally, the ALJ found Plaintiff was capable of performing sedentary work, but the Social Security Rulings indicate that a sit/stand option is generally inconsistent with the prolonged sitting contemplated by sedentary work, although it may be accommodated in some vocations, and

therefore a VE should be consulted to clarify the implications of such a limitation. The Court accordingly cannot find that the ALJ's error was "inconsequential to the ultimate nondisability determination" and therefore harmless. *See Tommasetti*, 533 F.3d at 1038.

### B. Remand is Required

The decision whether to remand for further proceedings or order an immediate award of benefits is within the Court's discretion. *See Harman v. Apfel*, 211 F.3d 1172, 1175-78 (9th Cir. 2000). Unless "the record has been fully developed and further administrative proceedings would serve no useful purpose," remand for further proceedings is warranted. *Garrison v. Colvin*, 759 F.3d 995, 1020 (9th Cir. 2014). Here, the ALJ failed to properly consider the sit/stand option which Plaintiff's treating, examining, and non-examining physicians opined was necessary and the circumstances of this case therefore indicate that there are outstanding issues regarding the medical evidence that must be resolved before a final determination can be made. Further administrative review may remedy the ALJ's errors and thus remand is appropriate. *Ghanim v. Colvin*, 763 F.3d 1154, 1166 (9th Cir. 2014); *McLeod v. Astrue*, 640 F.3d 881, 888 (9th Cir. 2011). Moreover, Dr. Boniske opined that Plaintiff was able to sit for an hour before requiring a break, while Dr. Fabella opined that a break would be required every thirty minutes and Dr. Jackson and Dr. Wong proposed no temporal boundaries to the sit/stand option. AR 130, 163, 1265, 1436. The resolution of conflicting medical evidence is a determination solely for the ALJ. *See Andrews v. Shalala*, 53 F.3d 1035, 1039-40 (9th Cir. 1995) ("The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities.") (citations omitted); *see also Tommasetti*, 533 F.3d at 1041 ("[T]he ALJ is the final arbiter with respect to resolving ambiguities in the medical evidence."). As it is not clear that "further administrative proceedings would serve no useful purpose," remand for further proceedings is appropriate. *See Garrison*, 759 F.3d at 1020.

Having found that remand is warranted, the Court declines to address Plaintiff's remaining arguments. *See Hiler v. Astrue*, 687 F.3d 1208, 1212 (9th Cir. 2012) ("Because we remand the case to the ALJ for the reasons stated, we decline to reach [plaintiff's] alternative ground for remand."); *see also Augustine ex rel. Ramirez v. Astrue*, 536 F. Supp. 2d 1147, 1153 n.7 (C.D. Cal. 2008) ("[The] Court

need not address the other claims plaintiff raises, none of which would provide plaintiff with any further relief than granted, and all of which can be addressed on remand.").

**<u>CONCLUSION</u>**

Based on the foregoing, the Court finds that the ALJ's disability determination warrants remand. Accordingly, the decision is REVERSED and the case REMANDED to the ALJ for further proceedings. On remand, the ALJ will reweigh the medical evidence and address the deficiencies identified by the Court. If necessary, the Commissioner may hold further hearings and receive additional evidence.

Accordingly, the Clerk of the Court is DIRECTED to enter judgment in favor of Plaintiff Rebecca Rae Gonzales-Welch and against Defendant Nancy A. Berryhill, Acting Commissioner of Social Security.

IT IS SO ORDERED.

Dated: **March 27, 2019**      /s/ *Barbara A. McAuliffe*
                                             UNITED STATES MAGISTRATE JUDGE